UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-CR-0393-CVE-1 |
| ) | |
| RANDY THOMAS LYNCH, ) | |
| a/k/a Hooligan, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is Defendant's Motion to Suppress Evidence with Brief in Support (Dkt. # 96). Defendant Randy Thomas Lynch argues that evidence recovered during the execution of a search warrant at 10105 East 63rd Street South in Tulsa, Oklahoma should be suppressed, because the search warrant was not supported by probable cause. Dkt. # 96. Plaintiff responds that law enforcement officers received information from a reliable source of information that persons at the address were illegally possessing drugs and firearms, and Tulsa County Sheriff's Office Deputy Marlin Warren conducted additional surveillance of the address to corroborate the informant's tip before seeking a search warrant. Dkt. # 98. The Court has reviewed defendant's motion to suppress and finds that an evidentiary hearing is unnecessary. Defendant has not requested a hearing under Franks v. Delaware, 438 U.S. 154 (1978), and his motion to suppress challenges the existence of probable cause based solely on the contents of the affidavit for search warrant.

**I.**

On August 8, 2021, a grand jury returned an indictment charging defendant, Lynch, Damen Ronald Mohawk, and Haley Ashton Spry with drug and firearm offenses based on evidence

recovered during the execution of a search warrant at 10105 East 63rd Street on July 15, 2021. A superseding indictment was subsequently returned charging defendant with being a felon in possession of a firearm (count one), drug conspiracy (count two), possession of methamphetamine with intent to distribute (count three), possession of a firearm in furtherance of a drug trafficking crime (count four), and maintaining a drug involved premises (count five).[1] The investigation arose after an informant contacted Special Agent Garrett Hendrickson of the Department of Homeland Security with a tip that members of the Irish Mob Gang (IMG) were storing firearms and weapons at a Tulsa residence.

The affidavit for search warrant was prepared by Warren after he received information from Hendrickson that an informant had observed members of the IMG in possession of illegal drugs and firearms at 10105 East 63rd Street in Tulsa. Dkt. # 96-1, at 9. HSI and other law enforcement agencies were conducting an ongoing investigation into the illegal activities of the IMG, and the illegal activities included drug and firearm trafficking, human trafficking, possession of stolen property, fraud, and money laundering. Id. On July 7, 2021, the informant told Hendrickson that several members of the IMG were using the residence located at 10105 East 63rd Street to store approximately 20 firearms and to distribute methamphetamine. Id. The informant believed the residence was being used as a "flop house" where members of the IMG would stay for a short period of time to conduct illegal activity. Id. Based on his experience, Warren knew that it was often difficult to determine who was staying at a flop house due to the regular traffic of persons and vehicles. Id.

---

[1] Mohawk and Spry have both pled guilty and Lynch is the only defendant set for trial in this case.

On July 7, 2021, Warren conducted surveillance at 10105 East 63rd Street, and he engaged in drive-by surveillance due to complexities with the location that made longer-term surveillance difficult. Id. Warren observed a female leave in a silver Cadillac after making a short visit to the residence, and he attempted to follow the silver Cadillac from the residence. Id. Warren lost the silver Cadillac in traffic after about three miles, but he was able to determine that the vehicle was registered to a Tulsa car dealership. Id. Warren drove back to the residence and observed a maroon Lexus parked at the house, and two persons with tattoos were cleaning the vehicle. Id. Warren used the vehicle's tag to check the registration, and the vehicle was registered to Spry. Id. Spry was known to police as a large-scale drug distributor and she had several prior arrests for drug distribution. Id. On July 8, 2021, Warren was conducting surveillance at the residence, and he saw Spry get out of a silver Cadillac. Id. at 10. Spry put some trash from the vehicle into a trash can sitting on the curb, and Spry entered the residence. Id. Warren observed four vehicles sitting outside of the residence, but none the of vehicles was registered to a person who Warren believed actually lived at the residence. Id.

Later on July 8, 2021, Warren conducted a trash pull from a trash container that was sitting on the curb outside of 10105 East 63rd Street, and he found two plastic bags containing a "crystalized ice-like substance." Id. One of the bags contained two grams of a substance that field-tested positive for methamphetamine, and the other bag contained one small crystal "which did not test." Id. Warren also found a syringe cap, drug notations, a marijuana canister, and packaging bags, and he found several personal checks for various amounts with the "pay to the order of" line left blank. Id. at 11. Based on his training and experience, Warren knew that these type of checks were often used in fraudulent check cashing schemes. Id.

Warren returned to the residence on July 9, 2021 to conduct additional surveillance, and a white was Nissan parked in front of the house. Id. A white male opened the trunk of the vehicle and went inside the residence, and he left after staying in the residence for a few minutes. Id. Warren checked the registration for the white Nissan and found that the vehicle was registered to Sherman Tyler. Id. Tyler had a pending arrest warrant in Rogers County for drug possession and paraphernalia charges, and Tyler also had pending drug charges against him in Osage County. Id. Hendrickson advised Warren that the informant had provided additional information that the occupants of the residence were convicted felons who could not legally possess firearms, and the IMG was known to use firearms to protect their illegal drugs or narcotics from rival gangs. Id. On July 9, 2021, a state court judge signed the search warrant (Dkt. # 96-1, at 13-18). Police officers executed the search warrant on July 15, 2021, and recovered nine firearms, ammunition, methamphetamine, stolen vehicles, and drug paraphernalia from the residence. Dkt. # 98, at 4. Lynch, Spry, and Mohawk were all present in the residence when the search warrant was executed, and all three of them were place under arrest.

## II.

Defendant argues that the affidavit for search warrant places too much emphasis on the information provided by the informant, and the affidavit provides little or no corroborating evidence supporting the informant's credibility. Dkt. # 96, at 3. He further argues that the evidence concerning the trash pull merely shows that a visitor to the house placed illegal drugs in the trash, and Warren's statements concerning short-term vehicle traffic at the residence are too general to support the existence of probable cause. Id. at 4-5. Plaintiff responds that the Court must consider the totality of the circumstances to determine whether the warrant is supported by probable cause,

and there is sufficient information in the affidavit to corroborate the informant's tips that illegal drugs and firearms would be found in the residence. Dkt. # 98. Even if the Court were to find that the warrant was not supported by probable cause, plaintiff argues that the police officers executing the warrant acted in good faith by relying on the warrant. Id. at 8-9.

The Supreme Court has stated that probable cause is a "fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213 (1983). In the context of search warrants, the Tenth Circuit requires that a magistrate issuing a search warrant find that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Tisdale, 248 F.3d 964, 970 (10th Cir. 2001) (quoting Gates, 462 U.S. at 238). "Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched." United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990). A magistrate may consider the affiant's experience as part of his probable cause determination. United States v. Soussi, 29 F.3d 565, 569 (10th Cir. 1994). When reviewing the search warrant affidavit, this Court must "interpret [the affidavit] in a common sense and realistic fashion." United States v. Grimmett, 439 F.3d 1263, 1270 (10th Cir. 2006). A reviewing court must show great deference to the magistrate's finding of probable cause and the magistrate's finding should be upheld if the magistrate had a "'substantial basis' for determining that probable cause existed." United States v. Perrine, 518 F.3d 1196, 1201 (10th Cir. 2008) (quoting United States v. Artez, 389 F.3d 1106, 1111 (10th Cir. 2004)).

Defendant argues that probable cause was lacking for the search warrant, because the affidavit for search warrant fails to establish the reliability of the informant. When probable cause is based on an informant's tip, "the court makes a probable cause determination based on the totality

of the circumstances, including the informant's veracity, reliability, and basis of knowledge." United States v. Hendrix, 664 F.3d 1334, 1139 (10th Cir. 2011). These factors are not absolute requirements for a magistrate's reliance on information provided by an informant, and the reviewing magistrate must consider the totality of the circumstances in determining whether an informant's tip should be considered in the probable cause inquiry. Id. If there is sufficient independent corroboration of the informant's information, there is no need for a magistrate to consider the informant's reliability. United States v. Danhauer, 229 F.3d 1002, 1007 (10th Cir. 2000). If the basis for the informant's tip is not fully described in the affidavit, the court should consider whether the tip contains "the kind of highly specific or personal details from which one could reasonably infer that the [informant] had firsthand knowledge about the claimed criminal activity." United States v. Quezada-Enriquez, 567 F.3d 1228, 1233 (10th Cir. 2009).

In this case, Hendrickson advised Warren that an informant had observed members of the IMG in possession of drugs and firearms at 10105 East 63rd Street, and the tip caused Warren to begin an investigation into the allegedly illegal activities occurring at that address. This was part of a broader investigation into the activities of the IMG by multiple law enforcement agencies, and the IMG was known to be involved in drug and firearm trafficking, human trafficking, possession of stolen property, fraud, and money laundering. Warren did not conduct any significant investigation into the informant's background or reliability, but he conducted surveillance for three days at the residence identified by the informant in an effort to corroborate the informant's tip. Warren kept track of the number of vehicles at the residence, checked the registration of the vehicles, and determined that several of the vehicles were registered to persons with a history of distributing illegal drugs. Warren performed a trash pull before and found evidence suggesting that the occupants of

the residence were distributing or using methamphetamine or were maintaining a drug involved premises.[2] The presence of regular short-term traffic of vehicles and persons at the residence was also considered as evidence that the occupants of the home were engaged in illegal activity.

Based on the totality of the circumstances, the Court finds that the affidavit for search warrant provided more than enough information to establish the existence of probable cause without further inquiry into the informant's credibility or reliability. This is not a case in which a police officer relied on an informant's tip as the primary basis to establish probable cause but, instead, Warren used the tip as the impetus for further investigation into illegal activity. Warren's investigation provided a substantial amount of evidence corroborating the informant's tip, and the reliability of the informant is not a significant factor in the probable cause analysis. United States v. Cruz, 977 F.3d 998, 1006 (10th Cir. 2020) ("[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant"). Warren's affidavit described the three days of surveillance he conducted at the residence, and it is clear that the informant's tip to Hendrickson was simply one factor among many to establish the existence of probable cause. The other factors include the regular short term traffic of vehicles and persons at the residence, the identity of those persons as known drug dealers, and illegal narcotics and

---

[2] Defendant argues that the evidence recovered from the trash pull should not be considered as a factor in establishing probable cause, because Warren failed to establish that the illegal drugs were placed in the trash by an occupant of the residence. Dkt. # 96, at 5. Defendant speculates that the illegal items could have been deposited by someone who was not an occupant of the house, and he claims that the trash bin was a "used as a communal trash receptacle by third parties." Id. While these are possible defenses that could be raised at trial, Warren was not required rule out innocent explanations for the presence of illegal items in the trash can when forming an opinion that he had probable cause to seek a search warrant, and a reasonable magistrate reviewing the affidavit for search warrant could have considered the items found during the trash pull as part of the circumstances supporting the existence of probable cause.

paraphernalia found during the trash pull.  There is nothing in the record suggesting that Warren's affidavit gave undue weight to the uncorroborated tip of a confidential informant, and the Court finds that the magistrate had a substantial basis to find that probable cause existed for a search of 10105 East 63rd Street.  The Court can discern no other arguments raised by defendant in support of his request to suppress evidence seized from the search of the residence, and his motion to suppress (Dkt. # 96) is denied.[3]

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress Evidence with Brief in Support (Dkt. # 96) is **denied**.

**DATED** this 18th day of March, 2022.

*[Signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[3] Even if the Court were to find the search warrant facially invalid, plaintiff argues that the officers who executed the search relied on the warrant in good faith and no evidence should be suppressed.  There is a presumption that an officer relying on a warrant is acting in good faith and, although this presumption is not absolute, it "must carry some weight" with the Court.  United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993).  When an officer relies on a warrant issued by a neutral magistrate, the good faith rule should apply unless the "the underlying documents are 'devoid of factual support'" or the officer's reliance on the warrant was "wholly unwarranted."  Id.  The Court agrees that, even if the warrant had been found invalid due to a technical deficiency, the good faith exception would apply because the warrant contains significant evidence establishing the existence of probable cause and a reasonable police officer could have relied on the warrant.